Good afternoon, ladies and gentlemen. I assume everyone is aware that Judge Berzon is with us by telephone today. Judge Feshim and I are happy to be here to see you, and we only have one case on the calendar, so we'll get right to it and proceed with Siong v. Ashcroft. Counsel. Thank you, Your Honor. May it please the Court, my name is Stephen Scribner. I'm an attorney in private practice, and I'm here to speak on behalf of the Siong family. We're here today based on a petition for review filed by the Siongs family, challenging the decision of the Board of Immigration Appeals denying their motion to reopen. The motion to reopen was based on the ineffective assistance of the prior counsel. By the way, does this petition, however it comes out, render the prior petition you filed, remember that, the prior petition moot? Yes, Your Honor, it would. It would. And it doesn't matter which way the panel moves, right? Either way, it's moot. With regard to the petition originally filed in, I believe, 2000? Yeah. Yes. All right. Yes. That petition was essentially based on the same arguments, I think procedurally, the cases more properly before the Court as a challenge to the decision of the motion to reopen. I agree with that. I just wanted to confirm that, you know, your thinking was the same. Thank you. Yes, Your Honor. You're welcome. Those youngs are challenging the decision of the Board of Immigration Appeals denying their motion to reopen. That motion was based upon ineffective assistance of their former counsel. Specifically, counsel failed to fulfill her. The relief you would seek here is to have the Court direct the BIA to reopen the petition. Yes, Your Honor, to reopen the appeal. The proceedings. Yeah. The proceedings before the BIA. Before the Board, yes, to allow them to go ahead and have the decision of the immigration judge denying their asylum applications reviewed. Let me ask you this. If you were to get reopening, are you confined to the proper record you made? You know, could you raise new grounds that you didn't raise earlier? Or, you know, can you argue only, you know, whether or not there was ineffective assistance? And if there were, then do you have to rely on your, you know, older arguments on the merits? Well, the Petitioners are not claiming there was ineffective assistance in the representation they received before the Immigration Court. Just on the filing of the petition. Yes. At the time. Yes, Your Honor. The challenges, the arguments on appeal involve the judge's findings of fact and the judge's legal conclusions relating to their asylum application. What you're saying is only the BIA proceedings would have to be reopened, not C.I.J. Only the BIA proceedings have to be reopened. It doesn't have to be remanded to the immigration judge. Not necessarily, no. What does not necessarily mean? It was a question. No, we are not seeking a decision ordering a remand to the Immigration Court. You just want the BIA to consider the appeal on the merits after, I assume, the proper procedures are followed so that it has an adequate record before it. Yes, Your Honor. Was there a late notice of appeal filed which had a fair outline of the arguments? Was there ever a brief filed, late or otherwise, before the BIA? No, there was not, Your Honor. Why was that? Was that a consequence of the lateness? Yes, the notice of appeal or the denial of the appeal based on the lack of jurisdiction came down before any briefing could have occurred. I see. So there never was a brief. Therefore, there was no action. All right. Now, getting to me, the heart of your case or the nub, the question is, I think, whether you have or can make a showing of prejudice, right? And it's almost the same as, you know, what's the merits of your case before the BIA. Well, if I may, Your Honor, in a manner of speaking, I think that if you look at the applicability of Rojas Garcia and Dieringer, there is a presumption in this case of prejudice. And I believe that the presumption is supported by the various issues that are pointed out in my brief, issues that would be raised on appeal. You mean the presumption because of the type of ineffectiveness you're claiming? Yes. Just as in Rojas Garcia and Dieringer, these Petitioners were completely deprived of any review whatsoever because they're... Are you taking the position, then, that you're completely relieved of any obligation to show prejudice? No, Your Honor. And the brief filed in support of our petition is full of various issues that the Siongs would raise before the Board, findings of fact that go, in our opinion, contrary to the weight of the evidence, as well as errors of law, the way the asylum and withholding of deportation law was applied by the judge. However, the showing of prejudice, I believe, needs to be considered in the context of that presumption that has been established in Dieringer and Rojas Garcia. Well, isn't the test that you have to make a plausible showing, that you've got a plausible argument? Ultimately, yes. I mean, not to win, but to show prejudice, that you have to have a plausible argument, right? Well, yes, I agree that there needs to be a plausible form of relief. On the other hand, and neither Rojas Garcia nor Dieringer precisely explains how that requirement fits into the presumption and whether perhaps the burden then shifts, as I think it probably should, to the government to revoke the presumption of prejudice. I'm not following you. First of all, there's a presumption, and then something more has to happen before the burden. So there's a presumption. It's a presumption in your favor. Yes, Your Honor. But you have to make some additional showing before the burden shifts to the government? No. I think your problem is with the cases. The cases are confusing. I'm sorry, I can't understand you. I can't hear you either. I think Judge Berzahn said your problem is with the case. The case is confusing. Which case, Judge Berzahn? Well, both Dieringer and his successor, because Dieringer says at the outset that there is a presumption and then later seems to allude to an additional burden. I would tend to think that maybe you're right, that the burden is a shifted burden. In other words, it doesn't make the presumption necessarily shifted. And that's exactly my point. Generally where a presumption is raised, it goes to the other side to then rebut that presumption. That's a logical extension of Dieringer and Rojas Garcia, but it is not explicitly stated. They don't explain what happens once the presumption is raised. All right. Let me ask the question a little differently. I think I'm just getting more confused. You concede that at some point you have to make at least you have to make a showing that at least you have a I concede that there needs that the court needs to find that there is a plot. Well, ultimately, if there is. Well, let me ask the question a little bit differently. You know, I don't want to make you admit something that you seem to be so reluctant to admit. Maybe I don't blame you. But isn't that isn't that a fair reading of the cases that which Judge Burzon, I think, says are a little mixed up and they might be. But fair reading of the case is that at some point the petitioner has to show a plausible ground for relief. Well, certainly in Rojas Garcia, the case was ultimately denied because there were no plausible grounds of relief. But given that we're talking about a presumption of prejudice, I believe it falls to the to the government to respond, to attempt to rebut the presumption. And you see, if as Rojas Garcia says, if there is no showing forgetting about the bird, no showing of a plausible ground for relief, the petition should be denied. And why should the bird be on the government to defeat its own case? Well, because this is a situation where the opportunity for appellate review has been absolutely denied. And the point that the Deeringer court makes is that in such extreme circumstances, the process is is called fundamentally into question and prejudice is presumed on that basis. Well, you know, we're not getting any. We're not really getting to the question that really bothers me. And if we continue this, we won't, because you're out of time. Unless unless Judge Reinhart indulges at least one question I have. Well, we have the assuming. All right. I appreciate that. Assuming you have to make some showing. Right. And in your brief, you say, for instance, on the plausible ground issue, putting aside the burden under 3C, that petitioners presented a prima facie claim for asylum from France. Right. Yes. That's one of your arguments. Now, my problem with that argument is that nowhere in the asylum application can I see a claim of asylum from France. In other words, this almost is like an exhaustion type of argument. In the application form? Yeah. In the proceedings. Well, and in the proceedings. We don't have a transcript. And that's the other thing. We don't have a transcript, you know, of the hearing. So, you know, we almost have to depend on what the IJ says was testified to. I understand your point. And I think it's fair to say that that the issue was confused by all parties during the deportation proceedings, because these individuals were from Laos and there was such an obvious claim. That's another whole problem. Yeah, right. But ultimately, the they were charged that the country designated for deportation, their country of citizenship was France. Necessarily, they must have sought asylum from France. They it wouldn't make sense for them to seek asylum from a country to which the government didn't seek to deport them. Well, you know, there is some evidence in the IJ's own words. I've got exactly what they are. But he says something like, well, whatever happened to the petitioners in France. I'm paraphrasing, obviously, but, you know, you can't blame the government itself. You know, it didn't commit these acts. No. Right. So it's almost like, well, if you want admission that they were persecuted in France. Right. By the IJ. I mean, a recognition by the IJ that they face persecution in France. In fact, the IJ said, well, they should address these claims to the French government. So almost in a sense, you can say the IJ implicitly recognized that maybe there was some inchoate claim of asylum from France. But it's not very clear in the records. You know, the problem is, you know, how clear is it that they really raised that claim so that we can review it? Well, Your Honor, I couldn't agree more. And that's what the appellate process is, in part, designed to deal with, to straighten out mistakes that are made in at the first before the immigration court. And unfortunately, the Seans have never gotten an opportunity to make these arguments directly to the Board of Immigration Appeals in the form of an appeal. And that's all we're seeking. If you had a chance to file a brief on the merits before the BIA, you could raise these things in logical order. Yes, Your Honor. Plus you would have a transcript. I'm sorry? Plus you would have a transcript to work with at that point. That's true as well, yes. I actually read the HA's decision as having decided the asylum from France issue. At least I think it's possible to read it that way. So there may be something. I'm sorry. If there was a question, I missed it. No, there really wasn't a question. Okay. I apologize. It's just the sound system. We're about 50% over, and I assume you want a minute for rebuttal. Yes, please. Then we better end this now. Thank you very much. Good afternoon. May it please the Court. My name is Dan McClain, and I'm appearing on behalf of the Respondent. Counsel, the thing that seems to give everybody some trouble with this case is that the failure of counsel to appeal on time frustrates the entire, appears to frustrate the entire process, because as I understand the letter that the Department of Justice sent us, you don't prepare a transcript when the appeal is untimely. That's correct. It's a general practice of the Board not to prepare a transcript when there's an untimely appeal. It's hard for us to see the merit of some of these issues without being able to see a transcript. We don't know, for instance, whether at the immigration hearing there was discussion about the fact that the asylum was from France, whether everybody understood that, whether that's what was litigated. More specifically, I don't understand how we could possibly decide this issue of the translator, where they say it was an inaccurate translation that prejudiced them, and we don't have a transcript to look at. And they can't write a brief without a transcript, or they didn't write a brief. We don't have a transcript. How could the BIA tell? Well, there are two issues there, Your Honor. The first one is you're saying, as I understand it, that we don't know what issues were actually litigated before the immigration judge because the Board has this policy that if an appeal is untimely, there's no transcript made, right? Is that my understanding? Well, that's not generally we don't know what issue. I mean, this issue of the extent to which at the hearing there was a discussion, because as Judge Berzon suggested, and Judge Tsushima also, I think, there seems to be somewhat of a decision. It's somewhat ambiguous as to what the IJ said as to whether this is asylum from France. Well, Your Honor, the immigration judge explicitly found that the Songs had firmly resettled in France and then went on to say that there was no objective evidence to suggest that they had a well-founded fear of persecution in France. But that means that he did decide the question of whether they had asylum from France. In other words, that he didn't think there was a procedural bar to considering asylum from France. I'm sorry, Your Honor. That's exactly right. The immigration judge considered the arguments of the petitioners from both asylum from France and from Laos, and as did the board. The board also in their decision, in its decision, said there's no evidence to suggest that the Songs faced persecution in France. How does it know there's no evidence if it doesn't see the record? Well, the evidence is set forth, the facts are set forth by the immigration judge. Well, I suppose he didn't report some of the facts that are important. Well, Your Honor, the case has been pending since 1999. Well, who's fault is that? Well, we respectfully suggest that in the interim that the petitioners could have pointed to specific instances of translation where they thought that a translation error may have affected the proceedings. All right, let's go to the question of whether there's a plausible argument for asylum from France. Hello? Okay, yes, Your Honor, I'm following you. IJ and the BIA said there was no objective evidence. There was testimony that there were death threats when they were in France. There was testimony that several people in the same situation were killed in France before they left. And there was testimony that at least one person in a similar situation was killed after they left. Now, one could say that that's not enough evidence or you could say several things about it, but how can you say there was no evidence? Well, the immigration judge considered that and set that forth in her decision. She concluded that they testified incredibly, but there was no objective evidence. Well, what does that mean? Why isn't that objective?  Why isn't that objective? Well, there's no they didn't set forth any documentation. That's different. You can say there's no documentation, but that's not the same as saying there's no evidence. Well, they've lived for 13 years in France. The French citizens, the children are French citizens. They haven't been harmed. While that doesn't foreclose the inquiry, and the only documentary evidence, they didn't produce any police reports. The police promised to investigate, although there's a dispute about whether they, in fact, did investigate. But they only produced one letter in front of the immigration judge, and that's from an American group that says political leaders of Laos are targeted in France. And it's some objective evidence. It's not no objective evidence. Well, that may be, but it's not sufficient. The immigration judge found reasonably that it wasn't sufficient evidence to establish a well-founded fear of persecution. But that's not what he said. That's what's disturbing. He said, however, there are no objective indications that Respondent and his family will be persecuted. Well, that can be seen, Your Honor, as a reflection that. Well, but, Mr. McClain, though, isn't the test here not whether or not the immigration judge or the BIA should be reversed? But at this point, the test is merely, is there a plausible ground for that claim? Isn't that a much lower threshold? And doesn't the evidence that, you know, Judge Berzon recites from the IJ's own recital, isn't that a plausible ground? Well, Your Honor, in this case, they're one and the same, in that the board of immigration, it's clear that the board, in deciding the motion to reopen, considered the song's attack on the immigration judge's decision. So the question is, wait a minute, so then the question is, did the board err in finding there is no plausible ground? That's the question before us, right? Well, the question would then be, did the board err in concluding in the alternative that the immigration judge was correct, that the song was correct? Without a brief and without a transcript. Well, the transcript, Your Honor, there was a brief. There's certainly a brief. No, there was not a brief. In the motion to reopen, Your Honor, the song's laid out. No, no, but they didn't have an obligation there to convince you on the merits. That brief was only designed to convince you that there was a plausible argument. You didn't have the brief on the merits that counsel had said he or she was going to file. That's right. It's an effort to ‑‑ their obligation is to demonstrate to the board that they suffered, because of the lack of a timely appeal, some actual prejudice. That there's a plausible basis for that. That's what Dieringer talks about. Yeah. It doesn't mean that you're going to win the case. You have a much, as Judge Tejima said, a much lower threshold. It's a much lower threshold in the abstract, but in this case, Your Honor, the board did consider the song's arguments. The song's didn't point to any instance in which the immigration judge erred. They didn't say the immigration judge, because of the faulty transcript, messed up this. Or they didn't say that the immigration judge failed to consider this additional evidence that we would have presented. What they said was the immigration judge came to the wrong decision. Well, isn't that a little difficult for somebody who's not the original counsel, wasn't at the hearing, and is dealing with people who say the translator didn't understand them?  And doesn't have a transcript. How are they going to point to the errors in the transcript? The tapes are available, Your Honor. They can go to, upon request, to the immigration judge, listen to the tapes, as, in fact, was done in this case. The INS, the former INS, at the time of the INS, went to the tapes and listened to them. The song's in the pendency of their appeal. This appeal's been going on for five years. Now, it's not their fault that it went on for five years, but it is their obligation to go to the tapes and point to some specific instances. Otherwise, the presumption of a faulty transcript, there's a presumption that a transcript is error-free doesn't apply otherwise. And, in fact, in this case, the immigration judge took the unusual, if not extraordinary, step. But here we start with a different presumption. We start with a presumption of prejudice, which is not the ordinary presumption. That's right. There's – Deringer says there's a presumption of prejudice. But I'll also point out that Deringer says that the presumption applies when the appellate process has been taken away altogether. Here, the board has not – the appellate process has not been taken away altogether for the songs. We're here today. That's proof of that. All right, Mr. McClain. Give me your view of how the Deringer presumption fits in with, you know, the statement either Deringer or the other case that, well, someone has to make a showing of some plausible ground for relief. Right. How does that fit in with the presumption? I think this Court's precedent can be construed as saying you not only have to show that your former counsel erred, but you also have to show that there's some prejudice that flowed from that error. That's always the case. And Deringer obviously – I'd say it's meant to be making a special rule for instances in which the appeal was totally denied. And the special rule seemed to be that there was a presumption different than what ordinarily operates. So what were they saying? Well, they're saying that if you've been foreclosed from judicial review – I'm sorry, Your Honor. The Deringer Court says that if you've been foreclosed from judicial review, there's a presumption of prejudice. All right. Here, there has been, though, deprivation of review. The Board considered the Song's arguments, considered their arguments that they were being persecuted in France, considered their alternative argument that they were being persecuted in Laos, and rejected them both. You're saying we should treat this case as if they decided the appeal on the merits? Your Honor, in fact, that's in fact what they did. They said – This appeal that they have now should be a different appeal from the motion to reopen. This should be an appeal from the merits of the decision. Have you ever argued that they were entitled to appeal the merits of the Board's decision and that's what they should be appealing instead of the denial of the motion to reopen? Not at all, Your Honor. Our point is that in this case the Board considered their arguments of prejudice and in doing so essentially conflated the merits argument with the prejudice problem and the Song's have not pointed to any additional evidence that they would present to the Board that they have not already done. So what we have is process for process sake. But the problem is that the Board was doing that without a brief that was directed at the merits as such and without a transcript from which to judge the merits as such, right? Well, I respectfully disagree, Your Honor. If you look at the motion to reopen they filed, they recognized that they had to show prejudice and in fact they re-argued the merits of their case through the prejudice argument of their motion to reopen. All right. Sticking with the need to show prejudice now, although I can see you're past your time too. Yes, I am. But we know Judge Reinhart feels generous today. On the showing of prejudice now, what standard do you think the petitioner has to meet to show prejudice on the firm resettlement claim? On the firm resettlement claim, Your Honor, our position is that they have to show actual prejudice. No. I mean, what suffices to show actual prejudice? It would suffice to show actual prejudice if they could show that their failure to timely file an appeal with the Board would have affected the outcome of the case. In this case, the Board addressed their firm resettlement argument. The Board concluded you firmly resettled in France and then went on to say there's nothing to suggest that they faced persecution there. In essence, adopting what the immigration judge had said. But there was evidence to show that they faced discrimination there, right? That is correct, Your Honor. There's evidence that they faced economic discrimination and some other forms of exclusion from French society. But we respectfully suggest that those don't arise to the level of persecution. I guess what I'm getting at, Mr. McLean, do they have to make a showing that substantial evidence does not support the decision of the immigration judge or is there some lower standard? That would essentially be it in this case, Your Honor, because in this case the Board considered their arguments and rejected them on the merits. What's the difference between that and reopening? I don't know if there is much of a difference here. That's what I was suggesting. You're really arguing now that they did reopen and that this appeal is really moved because it was reopened and that what we have is an appeal on the merits. In effect, the Board has made it this the way the Board structured its decision is that it made a bunch of alternative arguments. It said we're going to treat this as a motion to reopen. It's untimely. I'm sorry. There's no prejudice. And, therefore, there's no relief proper here. Let me ask you one other question. We have remarkably had some success on occasion with our settlement program. We have mediators who seem to be very – they even settled a capital punishment case, which I would not have thought possible. I know these people are eligible for an adjustment status. That's only one development after the original denial. Is there any possibility that we could let the parties go to talk to the mediator before we render a decision? I can certainly discuss it with the client, Your Honor, and I can get back to you on that if you like. And I'll be happy to do that. All right. I think that would be helpful. Well, this case has gone on an awful long time, and it could well go on another series of rounds. Can you give us an estimate of how much time you would need to do that within a week, you think? Can you give me 10 days just to be sure, Your Honor? Well, it's not up to me. I'm just asking a question. Two weeks? That's fine. Two weeks is feasible. I have one other legal question. To go back to the firm resettlement, there's an exception to firm resettlement where the conditions of the country are substantially and consciously restricted by the authority of the country. I understand it says the authority of the country, but if we're talking about a plausible legal argument, is it a plausible legal argument to say that a failure to control known discrimination and adverse conditions can never be a basis for coming within that exception? Is it a plausible legal argument, Your Honor, that economic discrimination and mild harassment and things like that? Not persecution. I'm not talking about persecution. Right. I'm talking about the exception to the firm resettlement. I think, Your Honor, that the case law suggests that that doesn't rise to the level of such a substantial restriction on the firm resettlement bar, especially here. But that's the argument that I understand them to be making. What I'm asking is, is that so implausible that it wouldn't support a reopening? Your Honor, I did not understand the petitioners to be making that argument. I understood them to be making the argument that the persecution that they faced in France substantially restricted the conditions of the firm resettlement. So I don't ‑‑ I regret to say I don't have a definitive answer for you on that to your question. Thank you. Thank you very much. Thank you, counsel. Thank you. We'll give you a minute for rebuttal if you want. It's not mandatory. I'll take the opportunity. All right. Now we'll take a minute by asking you whether you are interested in participating in our mediation program if the government is. Absolutely I would be. In fact, we attempted to settle this case two years ago by going to the district director and asking the district director to join in our motion to reopen once a judgment became available. That's a little different. So we're happy to continue that effort. Our mediator is very experienced and able and has a good success record. So there's nothing to lose as long as you're willing to do it. We'll find out. All right. Now we'll give you another minute. Thank you, Your Honor. I'm not even sure it's necessary to drive this point home. But the government seems to think that the consideration of the issues that would arise in the appellate process in the context of this motion to reopen is an adequate substitute for the appellate process itself. Absence a record, which apparently there are means of obtaining that record, but it's not a part of the process.  And as we're seeing today, it makes the job of the federal courts, should an individual seek review from the Board of Immigration Appeals, as we're doing here, your job in trying to review the Board of Immigration Appeals assessment of the issues involving asylum is severely handicapped. This is just no substitute for the appeal process itself. And I think the firm resettlement, the confusion about firm resettlement is a clear example of that. One cannot be firmly resettled in the country from which they're seeking asylum. And the only country from which these people could be seeking asylum is the country to which they were to be deported, and that's France. Why couldn't you be firmly resettled just because you claim that you're being persecuted? Firm resettlement, I'll refer you to, there's a decision, Andreazian v. INS. This is a 1999 decision from this circuit. Or you could simply refer to 8 U.S.C. Section 1158. Firm resettlement refers to a third country through which an asylum applicant passed, between leaving the country from which they're seeking asylum and arriving in the United States. And the question is, were they firmly resettled in that third country? Well, that's the way this case started out, isn't it? Wasn't the original application for asylum from Laos? Well, certainly at times in the process, the judge and perhaps even counsel for the Siangs approached it that way. But that's simply legally incorrect. Well, that raises another whole series of problems that I'm afraid we don't have time for at the moment. Part of whether this application for asylum, which was for asylum from Laos, somehow became transmogrified during this process into an application for asylum from France. All right. Well, I think we have enough issues for the day. Yeah. Thank you very much. Thank you. Thank you both very much. The case just argued will be submitted. The court will stand in recess for the day. All rise. This court for decision is now adjourned.
judges: Reinhardt, Tashima, Berzon